UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THOMAS S. ARMSTRONG                                                    *Plaintiff*

v.                                                   Civil Action No. 3:20-CV-678-RGJ

LIBERTY MUTUAL FIRE INSURANCE                                          *Defendants*
COMPANY

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas S. Armstrong ("Armstrong") and Defendant Liberty Mutual Fire
Insurance Company ("Liberty Mutual") both move for summary judgment.  [DE 11; DE 12].
Briefing is complete [DE 13; DE 14; DE 16] and this matter is ripe.  For the reasons below, the
Court will **DENY** Armstrong's Motion for Summary Judgment [DE 11] and **GRANT** Liberty
Mutual's Motion for Summary Judgment [DE 12].

## I.        BACKGROUND

In September 2019, Ashley Stickle ("Stickle") struck Armstrong with her vehicle while he
was riding his bicycle. [DE 12 at 137].  Stickle was insured by State Farm, and Armstrong settled
his suit against Stickle for her policy limits.  *Id.* Armstrong had Underinsured Motorist ("UIM")
coverage under a Liberty Mutual policy (the "Policy").  *Id.* at 138.  The central dispute is whether
the Policy entitles Armstrong to $100,000 or $300,000 in UIM coverage for the damages he
sustained due to the accident.  [DE 1-1 at 6].   In April 2020, Armstrong sent Liberty Mutual a
*Coots* notice and demanded UIM coverage.  [DE 12 at 137-38].  Liberty Mutual offered Armstrong
$100,000 in UIM coverage, which it contends is the Policy's limit.  *Id.* at 138.   In October 2020,
Armstrong sued in Jefferson County Circuit Court seeking a declaratory judgment that the Policy's

limit is $300,000, not $100,000.  [DE 1-1].  Liberty Mutual timely removed the case to this Court based on diversity.  [DE 1].  The parties now cross-move for summary judgment.  [DE 11; DE 12].

## II.    DISCUSSION

### A.  Jurisdiction

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  While the Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so.  *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004).  While neither party has addressed the Court's jurisdiction, the Court will first determine whether the exercise of jurisdiction is appropriate under the circumstances of this case before addressing the parties' motions for summary judgment.  *See Berkley Assurance Co. v. Carter Douglas Co., LLC*, No. 1:18-CV-00099-GNS, 2020 WL 201051, at *1 (W.D. Ky. Jan. 13, 2020) ("Although the issue has not been raised, courts are encouraged to, sua sponte, examine the issue of whether to exercise their discretion in asserting jurisdiction over actions brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a)").

The court considers five factors ("*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is proper.  *Grand Trunk W.R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted).  Although the Court must balance the five factors, the Sixth Circuit has never clarified the relative weights of the factors.  *Id.* at 326.

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue."  *Grand Trunk*, 746 F.2d at 326.  Because "it is almost always the case

2

that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008); *Bituminous*, 373 F.3d at 814; and *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

There are two lines of cases in the Sixth Circuit. *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-00326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018), *aff'd*, 936 F.3d 386 (6th Cir. 2019) (citing *Flowers*, 513 F.3d at 555). "One line of cases approved of declaratory actions because they can 'settle the insurance coverage controversy,' while a second line of cases disapproved of declaratory actions because while they 'might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy.'" *Id*. (quoting *Flowers*, 513 F.3d at 555).

This action falls into the first line of cases. The parties dispute whether Armstrong is entitled to $100,000 or $300,000 in UIM coverage. There are no fact-bound issues of state law awaiting resolution in the state-court litigation. *See Bituminous*, 373 F.3d at 813–14. As a result, this declaratory judgment action will "settle the controversy," as it resolves the dispute between the insurer and insured over coverage. *See, e.g.*, *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 760–61 (6th Cir. 2014). The first two *Grand Trunk* factors therefore support the exercise of jurisdiction.

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. Based on the parties' pleadings, there is no competing state court declaratory action. Thus, the third *Grand Trunk* factor supports the exercise of jurisdiction.

The fourth *Grand Trunk* factor addresses "whether accepting jurisdiction would increase friction between federal and state courts" and is broken into three sub-parts. *Id.* at 559. The first sub-part "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* at 560. Here, any factual determinations the Court may have to make will not overlap with a state court action because there is no state court action pending. As a result, this sub-part supports exercising jurisdiction.

The second sub-part examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id.* The Sixth Circuit has "found that 'issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Id.* at 561 (quoting *Travelers Indem. Co. v Bowling Green Prof. Assoc.*, 495 F.3d 266, 273 (6th Cir. 2007)). The questions that would arise here do not, however, involve novel issues of Kentucky law. *See Cole's Place, Inc.*, 2018 WL 1914731 at *8. The second sub-part therefore is neutral.

The third sub-part "focuses on whether the issue in this federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Kentucky state courts are "more familiar and, therefore, better able to resolve" interpretation of insurance contracts. *Id*. Even when the state law is not difficult to apply, the Sixth Circuit has usually found "that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place, Inc.*, 936 F.3d at 401, citing *e.g.*, *Flowers*, 513 F.3d at 561 and *Travelers*, 495 F.3d at 273. Because this action involves an interpretation of a Kentucky insurance contract, the third sub-part counsels against exercising jurisdiction.

The fifth and final factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief. *Grand Trunk*, 746 F.2d at 326. Kentucky law provides a declaration of rights procedure under KRS § 418.040. *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, No. 18-5267, 2018 WL 6787945, at *8 (6th Cir. Dec. 26, 2018). The Sixth Circuit has held that, "[i]n many ways, this alternative would have been better." *Flowers*, 513 F.3d at 562. Specifically,"[t]he Kentucky courts are in a superior position to resolve undecided questions of state law," and "Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge." *Id.* For these reasons, overall, the fifth *Grand Trunk* factor weighs against exercising jurisdiction.

As noted above, the Sixth Circuit has never suggested the relative weight of the factors; instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Cole's Place, Inc.*, 936 F.3d at 402 (citing *Hoey*, 773 F.3d at 759). Further,"[t]he essential question is always whether [the court] has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id*. (citing *Hoey,* 773 F.3d at 759) (citation omitted). Having evaluated those factors, the first three factors support exercising jurisdiction, as does one sub-part of the fourth factor. Because of the importance of these factors, the exercise of the Court's discretionary jurisdiction is appropriate.

## B. Summary Judgment

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party

satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Mut. Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Mut. Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Mut. Lobby*, 477 U.S. at 252.

To determine the extent of UIM coverage, the Court begins by interpreting the relevant insurance contract. *Stone v. Ky. Farm Bureau Mut. Ins. Co.,* 34 S.W.3d 809, 810 (Ky.Ct.App.2000). "The primary object in construing a contract . . . is to effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Mut. Ins. Co.,* 94 S.W.3d 381, 384 (Ky.Ct.App.2002). The parties' intentions are discerned from the four corners of the contract. *Id.*

In the absence of any ambiguities, the Court enforces the terms as written. *McMullin v. McMullin,* 338 S.W.3d 315, 320 (Ky.Ct.App.2011) (citing *Whitlow v. Whitlow,* 267 S.W.2d 739, 740 (Ky.1954)).

"A contractual provision is ambiguous if the provision is susceptible to multiple or inconsistent interpretations." *McMullin,* 338 S.W.3d at 320. Contractual terms are assigned their ordinary meaning, *Frear v. P.T.A. Indus., Inc.,* 103 S .W.3d 99, 106 (Ky.2003), and courts are "simply unwilling to torture words to import ambiguity into a contract where the ordinary meaning leaves no room for ambiguity." *First Home, LLC v. Crown Communications, Inc.,* No.2010–CA–001701–MR, 2012 WL 95560 at *5 (Ky.Ct.App. Mar. 15, 2012). That said, the contract should be liberally construed, and all ambiguous terms resolved in favor of the insured. *Ky. Farm Bureau Mut. Ins. Co. v. McKinney,* 831 S.W.2d 164, 166 (Ky.1992).

1. Relevant Policy Provisions

The Coverage Information section of the Policy Declarations provides:

## Coverage Information

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

Uninsured Motorists coverage and Underinsured Motorists coverage are charged on a per policy and not a per vehicle basis.

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|---|
| | | | VEH 1 1990 VOLVO 740 | VEH 2 2010 CHEVROL HHR | VEH 3 2003 PONTIAC VIBE |
| A. Liability | | | $486 | $437 | $486 |
| Bodily Injury | $ | 100,000 Each Person | Yes | Yes | Yes |
| | $ | 300,000 Each Accident | | | |
| Property Damage | $ | 100,000 Each Accident | | | |
| C. Uninsured Motorists | | | | | |
| Uninsured Motorists | $ | 100,000 Each Person | Per Policy Charge See Below | | |
| Bodily Injury | $ | 300,000 Each Accident | | | |
| Underinsured Motorists | $ | 100,000 Each Person | Per Policy Charge See Below | | |
| Bodily Injury | $ | 300,000 Each Accident | | | |

## Coverage Information continued

| COVERAGE | LIMITS | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|
| | | VEH 1<br>1990<br>VOLVO<br>740 | VEH 2<br>2010<br>CHEVROL<br>HHR | VEH 3<br>2003<br>PONTIAC<br>VIBE |
| Personal Injury Protection (PIP) (continued) | | | | |
| Limited Tort All Insureds | | | | |
| Optional Coverages | | | | |
| Towing And Labor Cost | $50 Each Disablement | $5 | $5 | $5 |
| Kentucky Local Tax | | $51 | $63 | $56 |
| Louisville Jefferson<br>Louisville Jefferson<br>Louisville Jefferson | | | | |
| **Annual Premium Per Vehicle:** | | $741 | $1,340 | $1,193 |

Uninsured Motorists Coverage Per Policy: $105
Underinsured Motorists Coverage Per Policy: $236
KY Department of Revenue Surcharge: $62.02

Total Annual Policy Premium: $3,677.02

[DE 12-5 at 154-55].

The "Limit of Liability" section of the "Underinsured Motorists Coverage" endorsement

provides that:

> A. Our maximum limit of liability for all damages resulting from any one accident
> is the limit of Coverage for the policy shown in the  Declarations.  This is the most
> we will pay regardless of the number of:
>
> 1. "Insureds;"
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the accident.

*Id.* at 187.

2. <u>Application of Relevant Policy Provisions</u>

Armstrong argues that the Policy is ambiguous and should be construed in his favor to

permit stacking of his UIM coverage.  [DE 11 at 89-90; DE 13 at 210-17].  Citing *Marcum v. Rice*,

987 S.W.2d 789, 790 (Ky. 1999), Liberty Mutual argues that the Policy's express and

unambiguous terms prohibit stacking of Armstrong's UIM coverage.  [DE 12 at 141-45].  More

specifically, Liberty Mutual argues that the UIM benefits cannot be stacked because the Policy contains an anti-stacking provision and is based on a single policy-level premium. *Id.*

In *Marcum*, the Kentucky Supreme Court considered

whether the public policy of Kentucky is violated by an automobile insurance carrier when it charges separate premiums for liability coverage for multiple vehicles in a single insurance policy, but only a single premium for a single item of underinsured motorist coverage, thereby defeating the claimed right of a UIM insured to aggregate or "stack" underinsured motorist coverage for all vehicles insured under the policy.

*Marcum*, 987 S.W.2d at 790.

The policy in *Marcum* charged "[s]eperate liability premiums . . . for each of the four vehicles, but only a single premium of $14 was charged for one item of UIM coverage in the amount of $100,00 per person per accident." *Id.* The policy also contained the following "anti-stacking" provision:

The limit of liability shown in the Declarations for 'each person' for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one insured in any one motor vehicle accident.

Subject to this limit for 'each person', the limit of liability shown in the Declarations for 'each accident' for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by two or more insureds resulting from any one motor vehicle accident.

This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

*Id.*

The Kentucky Supreme Court found that "[t]his language is unambiguous in its declaration that the policyholder receives only a single recovery of UIM coverage per person regardless of the number of vehicles insured." *Id.* The Court reasoned that:

Under the doctrine of "reasonable expectations," when one has bought and paid for an item of insurance coverage, he may reasonably expect it to be provided. The reasonable expectations of an insured are generally determined on the basis of an objective analysis of separate policy items and the premiums charged for each. *The determinative issue in the instant case,[1] therefore, is how many items of UIM coverage Appellants actually purchased, regardless of the fact that the insurance policy characterized the payment as only a single premium*.

*Id.* at 791 (emphasis added and internal citations omitted).

The *Marcum* court found that because the insurance company charged Appellants per UIM policy, and not per vehicle, Appellants were only entitled to only item of UIM coverage. *Id.*

Here, the Court finds that the Policy[2] prohibits the stacking of UIM coverage. As a result, the Policy entitles Armstrong to a maximum of $100,000 in UIM coverage. In *Atl. Mut. Ins. Co. v. Yates*, the Sixth Circuit reasoned that "[t]he only basis for a reasonable expectation of stacking under Kentucky law is where the insured actually pays multiple premiums for separate items of UM coverage." 497 F. App'x 451, 458 (6th Cir. 2012) (citing *Marcum*, 987 S.W.2d at 791). Because the policy there "expressly provided that the coverage is constant regardless of the number of vehicles insured, there is a single premium for a single unit of coverage, and thus no reasonable

---

[1] Armstrong argues that the "number of premiums charged may be used as one factor to determine what the insured could reasonably expect to receive. However, it is not the only factor." [DE 13 at 217]. But, according to the Kentucky Supreme Court, the "number of premiums charged" is the "determinative issue."
[2] The "Limit of Liability" section in the "Underinsured Motorists Coverage" endorsement contains an anti-stacking provision. [DE 12-5 at 187]. The Court recognizes, however, that the anti-stacking provision here is not identical to the one in *Marcum*. In *Marcum*, "a single premium of $14 was charged for one item of UIM coverage in the amount of $100,000 per person per accident." *Marcum*, 987 S.W.2d at 790. Here, a single premium of $236 was charged for one item of UIM coverage in the amount of $100,000 per person and $300,000 per accident. [DE 12-5 at 154-55]. Because the policy in *Marcum* apparently did not clearly differentiate between the amount of UIM coverage per person and per accident, it makes sense that the anti-stacking provision there would contain additional language clarifying that issue. On the other hand, because the Coverage Information section in the Policy Declarations does differentiate between the amount of coverage per person and per accident, it does not seem necessary for the anti-stacking provision to further clarify that relationship. Moreover, despite this discrepancy and as noted above, Armstrong is only entitled to a maximum of $100,000 in UIM coverage because in "assessing whether stacking should be permitted, the court must focus on how many items (or units)" of coverage have been "purchased by the insured." *See Atl. Mut.*, 497 F. App'x at 455. Because Armstrong purchased only one item of UIM coverage, he cannot stack it.

10

expectation of stacking." *Id.*  In reaching this holding, the Sixth Circuit noted that the policy "critically" directed the policyholder to the "Optional Coverages Page," which contained the following language: "[R]ates for UM or UM/UIM and added PIP are applied on a per policy basis. The same rate applies regardless of the number of vehicles insured on this policy."  Here, the Policy charged a "single UIM fee regardless of the number of vehicles covered under the policy, entitling that insured to only one unit of UIM protection."  [*Marcum*, 987 S.W.2d at 791; DE 12-5 at 154].  The Policy charged Armstrong $236 in "Underinsured Motorists Coverage Per Policy." [DE 12-5 at 155].  Significantly, the Policy contains functionally identical language to that approved of by the Sixth Circuit in *Atl. Mut.*: "Uninsured Motorists coverage and Underinsured Motorists coverage are charged on a per policy and not a per vehicle basis."  *Id.* at 154. And Armstrong has not carried his burden of proving that—despite the Policy's express language—the "single premium was calculated based upon the number of insured vehicles." *Encompass Ins. Co. v. Kugland*, No. 2005-CA-001821-MR, 2006 WL 3457483, at *2 (Ky. Ct. App. Dec. 1, 2006) ("The burden of proving how the single premium was calculated in the insurance policy is placed upon the [plaintiff]. It is inappropriate to enter summary judgment in favor of the [plaintiff] in absence of facts showing that the single premium was calculated based upon the number of insured vehicles") (internal citation omitted).

Finally, other Kentucky appellate courts have found that UIM coverage may not be stacked when, like the UIM coverage here, it is policy-based.  *See Cole v. State Auto Ins. Co.*, 19 S.W.3d 115, 116 (Ky. Ct. App. 2000)  ("State Auto [] implemented a premium structure similar to the one in the *Marcum* case. It was demonstrated that Cole paid the same premium for her two cars as other policyholders paid for one, two, or more cars . . . [T]he declaration sheet for the coverage in effect at the time of the accident clearly shows that the UIM coverage was policy-based.

11

Accordingly, under the rule set forth in *Swartz,* Cole is not entitled to stack her UIM coverage");

*Adkins v. Kentucky Nat. Ins. Co.*, 220 S.W.3d 296, 299 (Ky. App. 2007)  ("[W]e therefore hold

that an insurer is not required to stack multiple units of UM coverage which have been paid by a

single premium, if that premium is not based on the number of vehicles insured.  As in *Marcum,*

we base this conclusion on our recognition that an insured has no reasonable expectation of

stacking where he or she pays a single premium which does not vary based on the number of

vehicles insured");  *Encompass*, 2006 WL 3457483, at 2  ("In determining whether UIM coverage

is stackable, the 'deciding factor' is 'what the insured actually paid for . . . and the manner in which

the insurance company calculated and billed the premium'") (quoting *Marcum,* 987 S.W.2d at

791).

## III.   CONCLUSION

Having considered the parties' filings and the applicable law, and being otherwise

sufficiently advised, the Court **ORDERS**:

(1) The Court finds that the exercise of its jurisdiction over this declaratory judgment
    action under 28 U.S.C § 2201 is proper.

(2) Armstrong's Motion for Summary Judgment [DE 11] is **DENIED**.

(3) Liberty Mutual's Motion for Summary Judgment [DE 12] is **GRANTED**.

(4) This matter is **DISMISSED** with prejudice and **STRICKEN** from the Court's active
    docket.

(5) The Court will enter a separate Judgment.

Rebecca Grady Jennings, District Judge

United States District Court

August 18, 2021